## SLOSS–SHEFFIELD STEEL & IRON CO. v. UNITED STATES.

No. 41937.

Court of Claims.

Jan. 14, 1935.

Lyle T. Alverson, of New York City (Johnson & Shores, of New York City, on the briefs), for plaintiff.

James A. Cosgrove, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen. (Herbert E. Carnes, of Washington, D. C., on the brief), for the United States.

Before BOOTH, C. J., and GREEN, LITTLETON, WILLIAMS, and WHALEY, JJ.

LITTLETON, Judge.

In this suit plaintiff seeks to recover $776,400.75, income and profits tax for 1918, on the ground that a certain determined amortization allowance should be allowed as a deduction from the gross income for 1918 instead of being allocated to the years 1918 to 1921, inclusive.

June 26, 1918, plaintiff entered into a contract with the War Department under which it agreed to construct and equip a plant for the production of toluol, ammonium sulphate, and benzol, which were articles contributing to the prosecution of the war. The United States, through the War Department, agreed to buy the aforementioned products at stated prices during the period of two years from the beginning of the operation of the plant. September 16, 1918, plaintiff entered into a subcontract for the construction of the plant, and its construction was immediately started. The contract with the United States contained no provision for cancellation, but about the date of the Armistice the War Department instructed plaintiff to suspend operations under the contract with a view of adjusting the existing contract by a settlement agreement. When the contract was suspended the construction of the plant was approximately 30 per cent. completed. After various conferences and negotiations, a settlement was finally agreed upon by which plaintiff was paid $1,525,207.30 in full settlement, payment, and discharge of its contract with the War Department. As a part of the settlement plaintiff agreed that it would complete the construction of its plant. The plant was completed May 1, 1920. No products were ever delivered to the War Department through the operation of the plant; the discharge of this obligation in the contract referred to above having been taken care of through the award of $1,525,-207.30, hereinbefore referred to, which was paid to plaintiff in 1919.

The parties agree that the total cost of the plant was $6,147,608.35 and that its post war residual value was $4,395,529.97. On that basis the Commissioner of Internal Revenue determined an amortization allow-ance of $1,752,078.38, being the difference between these amounts, and further determined that in computing plaintiff's tax liability for 1918, 1919, 1920, and 1921 the amortization allowance should be allocated to those years on the basis of the expenditures made in the respective years during the construction of the plant, as follows:

|  | Gross expenditures | Amortization deductions allowed |
| --- | --- | --- |
| 1918 | $2,863,992.51 | $816,242.61 |
| 1919 | 2,291,847.38 | 653,180.17 |
| 1920 | 950,138.84 | 270,791.09 |
| 1921 | 41,629.62 | 11,864.51 |
|  | $6,147,608.35 | $1,752,078.38 |

Plaintiff contends that the foregoing allocation is improper and that, in lieu thereof, it is entitled to the entire amortization allowance as a deduction from gross income for 1918 instead of having that amount allocated in part to 1918 and the remainder to the other years. Section 234 (a) (8) of the Revenue Act of 1921 (42 Stat. 254, 255), which superseded a corresponding provision in the Revenue Act of 1918, provided as follows:

"(a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * *

"(8) In the case of buildings, machinery, equipment, or other facilities, constructed, erected, installed, or acquired, on or after April 6, 1917, for the production of articles contributing to the prosecution of the war * * * there shall be allowed, for any taxable year ending before March 3, 1924 (if claim therefor was made at the time of filing return for the taxable years 1918, 1919, 1920, or 1921) a reasonable deduction for the amortization of such part of the cost of such facilities or vessels as has been borne by the taxpayer, but not again including any amount otherwise allowed under this title or previous Acts of Congress as a deduction in computing net income."

In article 185, regulations 62, the Commissioner of Internal Revenue provided for the allocation of the "reasonable deduction" authorized by the statute, as follows: "The amortization allowance shall be apportioned (a) in cases where the property was employed in the production of articles contributing to the prosecution of the war, over

the respective accounting periods of the taxpayer, having reasonable regard to his gross and net income, and where separately ascertainable the income from the facilities upon which amortization is claimed, between January 1, 1918 (or if the property was acquired subsequent to that date, January 1 of the year in which acquired), and the actual or estimated date of cessation of operations as a war facility, and (b) in cases where the property was not completed in time for use in the production of articles contributing to the prosecution of the war, on the basis of the expenditures made on account of which amortization is allowed."

The Commissioner followed this regulation in his allocation of the determined amortization, but plaintiff insists that such allocation does not result in the allowance of a "reasonable deduction" whereas defendant takes the opposite view. The statute provides only for a "reasonable deduction" and makes no provision as to how such deduction shall be determined or allocated. The question presented is whether an application of the Commissioner's regulations in this case reasonably carries out the intent of the statute.

Plaintiff makes some argument that the 1921 act and the regulations promulgated thereunder can have no effect on the case for the reason that the year involved is 1918 and, therefore, is governed by the Revenue Act of 1918. The only material change in the 1921 act from the 1918 act is the addition of a clause making the provision applicable to "any taxable year ending before March 3, 1924 (if claim therefor was made at the time of filing return for the taxable years 1918, 1919, 1920, or 1921)." Section 234 (a) (8). The year in controversy is 1918, and claim was made in the return for that year on account of the item here in controversy. We think the 1921 act is clearly applicable to such a return.

The purpose of the amortization provision has been stated on many occasions by the Board of Tax Appeals and various courts which have had the matter under consideration. Although in the general discussions in those decisions lack of harmony in some respects exists, they agree as to the alleviative purpose of the statute and the intendment to relieve taxpayers of unbalanced investments made for war purposes through deductions from gross income. In that manner the excess costs brought about by the prices prevailing during the war period are reduced to costs on a normal or peace-time basis, and, therefore, when a given taxpayer comes to operate war-constructed facilities after the termination of the war, the cost of such facilities, on which the peace-time operation is based, will be a cost comparable to other peace-time constructions. After deductions have been allowed from gross income because of the excess costs, deductions in subsequent years are to be allowed on what has then become the balanced investment. The cost of the wartime plant in the case at bar was $6,147,-608.35, whereas its post war value when completed in 1920 was $4,395,529.97, the difference, $1,752,078.38, representing the deduction to be allowed as amortization in order to permit future deductions on the balanced investment of $4,395,529.97.

So far the parties and authorities agree, but the parties differ as to the year or years in which the amortization is to be allowed as a deduction. The position of plaintiff is that the deduction was intended only as relief from high taxes resulting from war profits and that, therefore, the deductions should be made only from profits accruing during the war period. Some support for this view can be found in the discussions by the Board of Tax Appeals in certain decided cases, but a situation fairly analogous to the case at bar has not been presented to that tribunal and, when a careful analysis is made of those cases, much that was said has no controlling influence on the case under consideration. In any event, we are of opinion that in all cases the purpose of the statute in authorizing the allowance of a reasonable deduction cannot be accomplished by having the allowance taken as a deduction from the war profits earned during the war period; on the contrary, we think that each case must be judged on its merits and that it is difficult to set out a definite rule to cover all cases.

This view is well illustrated by the case at bar. The contract with the War Department was not made, and construction of the plant in question was not begun until a short time before the Armistice. Plaintiff had substantial profits during 1917 and 1918, but, of course, no profits from the plant with respect to which it now seeks amortization. The profits in 1918 are referred to as war profits, that is, profits created during the period of the war; and the same applies to the profits earned for 1917; but no part of these profits resulted from the operation of war facilities on account of which amortization was allowable. The Revenue

Act of 1917 (40 Stat. 300), makes no provision for an amortization allowance, and the provision of the Revenue Act of 1918 (40 Stat. 1078, § 234 (a) (8) allowing amortization is applicable only on and after January 1, 1918. The Board of Tax Appeals has held (Appeal of Manville Jenckes Co., 4 B. T. A. 765), and the Commissioner has acquiesced in the decision (C. B. VII–I, p. 20), that commitments made prior to April 6, 1917, with respect to property not actually acquired until after April 6, 1917, but when acquired was devoted to war purposes, are subject to amortization, and therefore the amortization allowable on account thereof may be deducted in a period beginning January 1, 1918. To take care of or provide for the periods in which the deduction should be taken, the Commissioner provided in his regulations (art. 185, regs. 62) that with respect to facilities constructed and completed in time for war uses the deduction should be spread over a period beginning January 1, 1918, and ending with the date when the facility ceased to be used for war purposes, except where the facility was acquired subsequent to January 1, 1918, in which event the date of acquisition would be the beginning of the amortization period. Where, however, the facilities were not completed in time for the production of articles contributing to the prosecution of the war, the same article provides that the amortization allowance shall be apportioned on the basis of expenditures for the war facilities; that is, the amount of the determined amortization shall be allocated to the several years in which expenditures were made in proportion to such expenditures. The effect of plaintiff's contention is that, except in the very unusual instance where profits directly traceable to war contracts were realized after 1918, all amortization, whether arising from commitments made prior to April 6, 1917, as outlined above, or from expenditures made in 1917, 1918, or subsequent to 1918, shall be taken in 1918. In other words, the deduction would be thrown into 1918, and this, we think, would be "unreasonable" as opposed to the "reasonable" deduction contemplated by the statute. We do not think Congress intended such an unusual result by the general term "reasonable deduction." A more logical view would seem to be that had such a result been intended, the statute would have made specific provision therefor.

We are further of opinion that even if the amortization allowance is only to be deducted from war profits, it is too narrow a view to say that such profits are only those profits which were earned during the period of active war operations. It may occur that inventories on hand at the close of the war, commitments in various lines of war activities not carried to completion until after the close of the war, or many other factors, may be productive of income from which it would be reasonable to deduct an amortization allowance in order to arrive at the correct taxable income. Such a situation is illustrated in the instant case in which plaintiff received $1,525,207.30 in 1919 in the settlement of the contract on account of which the plant facilities here in question were constructed. The Commissioner determined that such amount was taxable income for 1919, and, while counsel for the defendant now seeks to have that amount treated as contractual amortization, and thus used to reduce the amount of the deduction for amortization allowable under the statute, we are clear that the Commissioner's action was proper. It was not an amount paid in reimbursement for capital costs incurred by plaintiff in the construction of its plant, but in settlement of the contract under which the government was obligated to take certain articles to be manufactured by the plant. The contract, under which settlement and payment were made by the War Department, was a formal contract made in accordance with section 3744, Revised Statutes (41 USCA § 16). If the amortization allowance is to follow closely related income, the deduction should have been taken from income for 1919 in which the amount paid in settlement of the contract suspended was included in income. The Commissioner's regulations do not require such a result, and we think properly so. In the case at bar the plant was begun in 1918 and substantial expenditures were made in that year. No war income was derived from the plant in 1918, though plaintiff did have substantial profits during the war period of that year. Likewise in 1919 there was no income from the plant, but there was substantial income in that year on account of the settlement contract referred to above. By following his regulations and allocating the amortization allowance on the basis of expenditures, the Commissioner allocated approximately 84 per cent. of the amortization allowance to 1918 and 1919 and the balance to 1920 and 1921. We do not know what the situation was in those latter years other than that expenditures for the completion of the plant

were then made, but from the record before us we cannot say that the Commissioner's action resulted in other than reasonable deductions for amortization.

It follows therefore that plaintiff's claim for a deduction of the entire amortization allowance in 1918 must be denied. The statute is framed in the most general terms, providing for a "reasonable deduction," and further, that such deduction may be allowed for 1918 as well as for subsequent years ending before March 3, 1924. Pursuant to the authority vested in him the Commissioner promulgated the regulations hereinbefore quoted, the application of which we think accomplished the result contemplated by Congress.

The case of Palmer, Trustee v. United States, 67 Ct. Cl. 648, 653, relied upon by plaintiff, involved an entirely different situation. The question there involved was whether amortization which had been determined under the Commissioner's regulations as applicable to a given year, but which was not entirely absorbed in computing income for that year, could, as to the unabsorbed portion, be carried forward and allowed as a deduction in the succeeding year, and this court held in favor of carrying forward that portion of the allowance on the ground of reasonableness. No such issue is now presented. It should be observed, however, that the court did say in that case that a broad construction should be given to the statute to the end that a reasonable deduction may be allowed and that the deduction may not be "confined to any period, i. e., one year or two years, or a war year or a peace year."

The petition must be dismissed. It is so ordered.